**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RONALD HAMILTON

                    *Plaintiff,*

    v.

JOHN REILLY, et al.

                    *Defendants.*

CIVIL ACTION
NO. 21-3295

**PAPPERT, J.**                                                                            **April 26, 2022**

<u>**MEMORANDUM**</u>

    While a pre-trial detainee at George W. Hill Correctional Facility in Delaware County, Pennsylvania, Ronald Hamilton was assaulted by another inmate. He sued four unidentified correctional officers, John Reilly (the facility's superintendent), Delaware County, the Delaware County Board of Prison Inspectors, and the GEO Group, Inc. He claims the individual officers violated the Fourteenth Amendment by failing to protect him, and that the remaining defendants failed to properly train and supervise their employees. The GEO Group and Delaware County move to dismiss Hamilton's claims against them. The Court grants their motion and dismisses Count Three of the Complaint without prejudice.

I

    John Balls, Hamilton's fellow inmate, attacked Hamilton in a common area, repeatedly punching him in the head and fracturing his jaw. (Compl. ¶¶ 15–19, ECF 1.) Hamilton suffered permanent nerve damage and experiences pain while eating and drinking. (*Id.* ¶ 20.)

Balls had previously threatened Hamilton, who communicated the threats to the unidentified correctional officers.  (*Id.* ¶ 17.)  Hamilton and Balls were nonetheless allowed to be in the same unsupervised common area.  (*Id.* ¶¶ 17, 25.)  While no officers were present in the common area during the attack, Hamilton claims the defendant officers witnessed the attack either directly or via video surveillance, but did not intervene to stop it.  (*Id.* ¶ 17–18; 23.)  He contends Reilly and the officers violated his rights by (1) failing to properly classify and segregate Balls and (2) not intervening to stop the assault when it occurred.  (*Id.* ¶¶ 23, 24, 26, 30, 32, 33.)

Hamilton also alleges there was a history of similar assaults and daily inmate-on-inmate violence at George Hill.  (*Id.* ¶¶ 40, 51.)  Reilly and the officers saw footage of the attacks on video and knew they were happening.  (*Id.* ¶ 50.)

In Count Three of his Complaint, Hamilton alleges that Delaware County, the Delaware County Board of Prison Inspectors and the GEO Group, which managed the day-to-day operations of the facility, failed to properly train and supervise correctional officers regarding the classification of inmates and the need to intervene to prevent inmate-on-inmate assaults.  (*Id.* ¶¶ 5, 37–38.)  Delaware County[1] and GEO Group move to dismiss that claim, arguing Hamilton's Complaint does not plausibly allege his injuries were the result of either an unconstitutional custom or policy or their failure to properly train or supervise their employees.  (Defs.' Mem. Supp. Mot. Dismiss at 5, 7–9, ECF 13.)

---

[1]      Delaware County also contends it should be dismissed because it does not operate George Hill. (*See* Defs.' Mem. Supp. Mot. Dismiss at 6–7, ECF 13) (citing *Bond v. Delaware Cnty.*, 368 F. Supp. 618 (E.D. Pa. 1973)).  Because Hamilton failed to state a claim for municipal liability against any defendant, the Court need not address this argument.  *See also infra*, note 5.

II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), Hamilton's

Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when

the pleaded facts "allow[] the court to draw the reasonable inference that [a] defendant

is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  When factual allegations

are well-pleaded, they are presumed to be true; the Court must "then determine

whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  But this

presumption "attaches only to those allegations for which there is sufficient factual

matter to render them plausible on their face."  *Schuchardt v. President of the U.S.*, 839

F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  This plausibility

determination is a "context-specific task that requires the reviewing court to draw on

its judicial experience and common sense."  *Id.* (quoting *Connelly v. Lane Const. Corp.*,

809 F.3d 780, 786-87 (3d Cir. 2016)).

III

Section 1983 claims against a municipal defendant can proceed in two ways.[2]

*Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  The first is by showing an

unconstitutional municipal policy or custom caused the underlying violation.  *Porter v.*

*City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020).  The second is by proving the

---

[2]      Although a private corporation, the GEO Group is contracted to provide services at George
Hill and thus acts under the color of state law.  *Williams v. GEO Grp., Inc.*, No. 22-365, 2022 WL
815446, at *3 (E.D. Pa. Mar. 17, 2022); *see also* (Compl. ¶ 5).  The principles governing § 1983 claims
against municipalities apply to claims against "private companies performing municipal functions."
*Smith v. Cmty. Educ. Ctrs., Inc.*, No. 18-5299, 2019 WL 2089997, at *2 (E.D. Pa. May 10, 2019).

violation resulted from a "failure or inadequacy" on the part of the municipality that demonstrated deliberate indifference to the risk that violation would occur. *Forrest*, 930 F.3d at 105–106.

A policy exists "when a decisionmaker [with] final authority . . . issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom, by contrast, is "a given course of conduct," which, "although not specifically endorsed or authorized by law, is so well-settled as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). To hold a city liable for its unconstitutional policies or customs, the policy or custom must have proximately caused the plaintiff's injuries. *Estate of Roman*, 914 F.3d at 798.

A plaintiff pursuing a claim under a failure or inadequacy theory must demonstrate "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106. Hamilton must show: (1) the municipal defendants know employees will confront a given situation; (2) the situation presents a "difficult choice" for employees or there is a history of employees' mishandling the situation; and (3) the employees' wrong choice "will frequently cause the deprivation of constitutional rights." *Forrest*, 930 F.3d at 106.

To show deliberate indifference for purposes of failure to train or supervise claims, it is ordinarily necessary to plead a "pattern" of untrained or unsupervised employees violating constitutional rights. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). If the plaintiff's failure to train or supervise claim is predicated on a single constitutional

4

violation, he must show the violation was a "highly predictable consequence" of that failure. *Id.* at 225 (quoting *Connick*, 563 U.S. at 64).

## IV

Hamilton does not allege an unconstitutional policy or custom caused his injuries.[3]  Instead, he claims they were the result of the municipal defendants' failure to adequately supervise their employees or train them to properly classify inmates and intervene in inmate-on inmate assaults.  (Compl., ECF 1, ¶¶ 37–38.)  But Hamilton has not plausibly alleged the municipal defendants were deliberately indifferent to the risk that without better training or supervision, officers would violate his constitutional rights, either by failing to properly classify inmates or by failing to intervene in inmate-on-inmate assaults.

## A

Under the Due Process Clause of the Fourteenth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of . . . inmates" and "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted); *see also Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020).  But not "every injury suffered by one prisoner at the hands of another" stems from a constitutional violation.  *Id.* at 367 (quoting *Farmer*, 511 U.S. at 834)).  Prison officials violate the Fourteenth Amendment only if they act with

---

[3]     While Hamilton asserts Defendants "crafted a policy that made reckless indifference to inmate assaults ubiquitous," (Compl. ECF 1, ¶ 51), he does not identify any "an official proclamation, policy, or edict" that was itself unconstitutional, *Forrest*, 930 F.3d at 105) (quoting *Estate of Roman*, 914 F.3d at 798).  "[A]llegations that simply paraphrase the standard for municipal liability[] are too vague and generalized to support a plausible claim."  *Williams*, 2022 WL 815446, at *4.

"'deliberate indifference' to a substantial risk of serious harm to an inmate." *Thomas*, 749 F.3d at 223 n.4 (quoting *Farmer*, 511 U.S. at 828)).

Two types of deliberate indifference are relevant to Hamilton's claims. First, an official demonstrates deliberate indifference to the risk of inmate-on-inmate violence if, before an attack, the official knows an inmate faces "an excessive risk of harm" from another prisoner but does nothing to prevent the assault. *Bistrian*, 696 F.3d at 369. Second, an official displays deliberate indifference if, when an attack occurs, he has "a realistic and reasonable opportunity to intervene" but "simply refuse[s] to do so." *Id.* at 371 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

Hamilton claims the individual officers failed both to take protective measures before his attack and to intervene when it occurred. Accordingly, to state a claim for municipal liability, he would need to show that either (1) the municipal defendants knew these types of violations occurred in the past or (2) the risk they would occur without additional training was "obvious," even in the absence of previous violations. *Thomas*, 749 F.3d at 223. He has done neither.

## B

Hamilton asserts that, prior to his assault, there were "other similar incidents of being deliberately indifferent to inmate assaults . . . involving defendants in their failing to properly classify inmates and protect them from inmate assaults." (Compl. ¶ 40.) But he alleges no facts to make his claims plausible. He does not contend, for example, that officers had a history of failing to identify and segregate inmates who posed a "specific and substantial" risk to other incarcerated people. *Bistrian*, 696 F.3d at 368. Nor did he point to previous incidents in which "longstanding, pervasive, well-

documented, or previously noted tensions" were ignored.  *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014).  The fact that inmate-on-inmate assaults occurred in the past, standing alone, is "not sufficient to create a pattern of violations."  *Thomas*, 749 F.3d at 225; *see also Ferrara v. Delaware Cty.*, No. 18-05157, 2019 WL 2568117, at *8 (E.D. Pa. June 21, 2019).

Hamilton offers nothing more than the conclusory assertion that the superintendent failed to "properly" train correctional officers "in the classification of inmates."  (Compl. ¶ 38.)  But "conclusory and general claims of failure to screen, train, or supervise employees" are not enough.  *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014).  Without "facts detailing specific deficiencies in any training programs," Hamilton cannot plausibly allege the municipal defendants "knew of should have known" that without more or different training, officers would misclassify inmates in ways that would expose them to an excessive risk of harm.  *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 433 (E.D. Pa. 2020) (citations omitted).

Nor can Hamilton proceed on a single-incident theory of liability without more detailed allegations connecting his alleged injury to a specific shortcoming in the defendants' training or supervision.  While pervasive violence at George Hill may be relevant to whether Hamilton's alleged injury was a highly predictable consequence of a particular deficiency, general allegations of violence do not relieve Hamilton of the obligation to identify that deficiency in the first place.  *See Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 443 (E.D. Pa. 2015).

The paucity of Hamilton's allegations concerning the officers' supposedly deficient training and supervision highlights a related problem: he offers so little detail

about the procedures for and significance of inmate classification at George Hill that it is impossible to discern how the failure to properly "classify" Balls led to his injury. Hamilton alleges the unidentified officers were deliberately indifferent to an excessive risk of harm when they allowed him to be unsupervised with Balls despite knowing of Balls' threat to Hamilton.  (Compl. ¶¶  17, 25, 33.)  But he never says what it means to "classify" an inmate, who classified Balls, or how Balls' classification related to the officers' decision to allow Hamilton and Balls to be together unsupervised.[4]   This fatally undermines his claim against the municipal defendants, because the "alleged deficiency in a training program must be closely related to the alleged constitutional injury." *Forrest*, 930 F.3d at 109.

## C

Hamilton's second theory of municipal liability—that the municipal defendants failed to adequately train or supervise officers regarding the need to intervene in inmate-on-inmate assaults—is even weaker.

## 1

As an initial matter, Hamilton's allegation that his rights were violated by the officers' non-intervention is plainly deficient. Confusingly, he claims he was attacked in a common area "where no correctional officers were present," but also that the

---

[4]      At one point, Hamilton alleges that it was Reilly who "failed to properly classify and segregate" Balls.  (Compl. ¶ 24.)  Elsewhere, he says Reilly "failed to have proper[] procedures to classify and segregate" Balls, and that he "failed to train properly his correctional officers in the classification of inmates."  (Compl. ¶¶ 32, 38.)  These latter allegations suggest it was a subordinate who made the relevant classification decision, but the Complaint is ambiguous.  Hamilton never alleges the individual officer defendants "classified" Balls.

individual defendants "were present," either physically or "through video surveillance." (Compl. ¶¶ 17–18).

Nowhere does he allege the officers had "a realistic and reasonable opportunity to intervene." *Bistrian*, 696 F.3d at 371. Indeed, it is not clear how they could have if, as Hamilton repeatedly insists, the assault occurred in an unsupervised area. (Compl. ¶¶ 17, 25, 33.) Without more detail about the length of the attack, the proximity of the guards, and how they could have prevented further harm, it is impossible to conclude the individual defendants' response (or lack-thereof) was "response was so unreasonable as to give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 371; *see also Benson v. Delaware Cty.*, No. 21-2854, 2022 WL 784475, at *3 (E.D. Pa. Mar. 15, 2022).

Municipal liability must be predicated on an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). "[I]f there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). Hamilton's unsuccessful effort to plead a failure to intervene claim precludes municipal liability under that theory.

2

Even if Hamilton had adequately pleaded a failure to intervene claim against the individual defendants, he has not plausibly alleged the municipal defendants were deliberately indifferent to the risk of that violation. Hamilton alleges Reilly "failed to discipline, train or otherwise sanction correctional officers who violate the rights of prisoners by failing to intervene and protect inmates," (Compl. ¶ 37), but he offers no details to substantiate these assertions. He just repeats that Reilly failed to "properly"

9

train the officers "with respect to the constitutional, statutory and departmental expectations of their authority[,] including intervening when inmates are assaulted by other inmates." (*Id.* ¶ 38.)

These conclusory statements are not enough, especially because they are divorced from factual allegations suggesting officers had previously failed to intervene when constitutionally required to do so. His unsupported assertion that there were previous incidents in which "defendants . . . fail[ed] to protect [prisoners] from inmate assaults," (Compl. ¶ 40.), is little more than "a legal conclusion couched as a factual allegation," *Estate of Roman*, 914 F.3d at 796 (quoting *Baraka v. McGreevey*, 481 F.3d 18, 195 (3d Cir. 2007)). And without more detail about either the nature of Hamilton's constitutional injury or the specific deficiencies that may have led to it, it is impossible to conclude the risk of his injury was "obvious" and "closely related" to the officer's deficient training or supervision. *Thomas*, 749 F.3d at 225–226.

## V

The Court must allow civil rights plaintiffs to amend their complaint "unless doing so would be inequitable or futile." *McCall v. City of Philadelphia*, 396 F. Supp. 3d 549, 563–64 (E.D. Pa. 2019). Hamilton has not yet amended his Complaint. If, consistent with this Memorandum, he can allege facts sufficient to state a claim against any municipal defendants, he may do so.

## VI

Hamilton has not yet served the other defendants in this case. The initial period for doing so has long passed. Rule 4(m) of the Federal Rules for Civil Procedure provides, in relevant part, "[i]f a defendant is not served within 90 days after the

complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Hamilton's Complaint was filed on July 23, 2021. He must serve the remaining defendants by the date set in the accompanying order or his claims against them will be dismissed without prejudice for lack of prosecution.[5]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

---

[5]     The summons issued to the Delaware County Board of Prison Inspectors was returned unexecuted because the Board is "no longer a legal entity." (Summons to Delaware County Board of Prison Inspectors at 2, ECF 3.) In the fall of 2019, the Delaware County Council replaced the Board of Prison Inspectors with a newly formed Delaware County Jail Oversight Board. *See Jail Oversight Board*, Del. Cnty. Pa., https://delcopa.gov/departments/prison/JailOversightBoard.html (last accessed Apr. 26, 2022). If Hamilton wishes to amend his Complaint to add the Jail Oversight Board as a defendant, he may do so by the time specified in the order for amending his Complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.") The Court expresses no opinion on what entity, if any, is responsible for the previous board's civil liabilities.