IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD HAMILTON,<br><br>   *Plaintiff,*<br><br> v.<br><br>JOHN REILLY, et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 21-3295 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　February 27, 2023

### MEMORANDUM

  Ronald Hamilton was assaulted by another inmate while being held as a pre-trial detainee at the George W. Hill Correctional Facility in Delaware County, Pennsylvania.  Hamilton sued Delaware County Jail Superintendent John Reilly, four unknown correctional officers, Delaware County, the Delaware County Board of Prison Inspectors and the GEO Group, Inc. under 42 U.S.C. § 1983.  Delaware County and the GEO Group now move to dismiss the only remaining claims in this case—intentional infliction of emotional distress (Count IV) and conspiracy to violate state and federal rights (Count V).  The Court grants the Motion because Hamilton fails to adequately plead the elements of either claim.[1]

I

  The Court previously discussed the factual background of this case in its April 26, 2022 Memorandum Opinion, (ECF 15), and summarized the procedural history in

---

[1] Delaware County also argues, as it did in its Motion to Dismiss Count III, (ECF 13), that it should be dismissed as a defendant because it did not operate George Hill.  The Court, as in a previous opinion, (ECF 15 at 2 n.1), need not reach this argument.

1

its June 29, 2022 Order. (ECF 19). On July 26, 2019, inmate John Balls assaulted Hamilton when the two were left unsupervised in a common area of the George W. Hill Correctional Facility. (Compl. ¶ 17, ECF 1.) Although four unknown correctional officers allegedly witnessed the attack, none intervened. (*Id.* ¶ 18.) Balls repeatedly punched Hamilton in the head, fracturing his jaw and causing permanent nerve damage. (*Id.* ¶¶ 19–20.) Hamilton alleges that before the attack, he warned several of the unknown correctional officers that Balls had threatened him. (*Id.* ¶ 17.)

The Court dismissed Hamilton's claims against Reilly and the municipal defendants for failure to protect (Count I), failure to intervene (Count II), and failure to train and supervise (Count III). (ECF 15, 16.) It also dismissed all claims against the four unknown correctional officers and the Delaware County Board of Prison Inspectors because they were not timely served. (ECF 17.) Counts IV and V name as defendants Reilly and four unknown correctional officers, not Delaware County or the GEO Group. As the Court explained in its June 29, 2022 Order, (ECF 17 at 1 n.1), Hamilton sued Reilly in his official capacity, so all claims against him are treated as claims against the municipalities, here, Delaware County and the GEO Group. (ECF 19 at 1 n.1.)

II

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F. 203, 210 (3d Cir. 2009). First, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. Then, it "must determine whether the facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

III

A

As an initial matter, Pennsylvania's Political Subdivision Tort Claims Act forecloses claims of intentional infliction of emotional distress against Delaware County and the GEO Group. 42 Pa.C.S. §§ 8541–42; *Lakits v. York*, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003). Even if it did not, Hamilton would still fail to state an IIED claim based on Reilly's conduct. For an IIED claim to be plausible under Pennsylvania law, "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Jordan v. Pa. State Univ.*, 276 A.3d 751 (Pa. Super. Ct. 2022) (quoting *Madreperla v. Williard Co.*, 606 F.Supp. 874, 879–80 (E.D. Pa. 1985)). Under the first prong, the "conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotations omitted).

Hamilton does not allege that Reilly was present during the assault, so his IIED claim cannot be premised on Reilly's failure to intervene. The only discernable bases for the claim are that Reilly failed to train correctional officers to properly classify inmates, and that he failed to train or supervise officers regarding the need to intervene in inmate-on-inmate assaults. As the Court previously explained, the Complaint "offers

3

so little detail about the procedures for and significance of inmate classification at George Hill that it is impossible to discern how the failure to properly 'classify' Balls led to his injury." (ECF 15, at 7–8.) Similarly, the Court already ruled that Hamilton has not alleged facts showing that correctional officers had a reasonable opportunity to intervene in the assault. (*Id.* at 9.) By extension, he fails to plead sufficient facts to show that, but for the alleged failure to train officers to intervene in inmate-on-inmate assaults, Hamilton would not have been injured. Even if Hamilton could satisfy the causation prong, mere failure to train or supervise correctional officers in this case is not "extreme and outrageous" conduct that would support an IIED claim.[2] *See Crawford v. Beard*, No. 04-0777, 2004 WL 1631400, at *2 (E.D. Pa. July 21, 2004) (denying motion to dismiss IIED claim based on correctional officers' failure to intervene, but dismissing IIED claim based on "mere[ ] fail[ure] to train or supervise").

B

In Count V, Hamilton alleges "conspiracy to violate the federal and state civil rights of the Plaintiff." Under Pennsylvania law, a plaintiff pleading civil conspiracy must allege (1) a "combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) [an] overt act done in pursuance of common purpose; and (3) actual legal damage." *Brown v. Blaine*, 833 A.2d 1166, 1173 n.16 (Pa. Commw. Ct. 2003). "[I]f the plaintiff is unable to allege facts that are direct evidence of the combination and its intent, he must

---

[2] Hamilton argues that whether conduct is "extreme and outrageous" is a question reserved for the finder of fact. (Response Br. at ECF p. 6, ECF 21.) That is incorrect. *See Ferrara v. Delaware Cnty.*, No. 18-CV-5157, 2019 WL 2568117, at *4 (E.D. Pa. June 21, 2019) ("The Eastern District of Pennsylvania has consistently held that a determination of 'extreme and outrageous' behavior is a preliminary matter for the court to decide.").

allege facts that, if proved, will support an inference of the combination and its intent." *Id.* The elements of a § 1983 conspiracy claim are: "(1) two or more persons conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs any overt act in furtherance of the conspiracy; . . . (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States;" and (4) "the conspirators act under the color of state law." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)) (cleaned up). As with state civil conspiracy, the plaintiff must plead the existence of an agreement by "demonstrat[ing] that the state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff his rights." *Id.* at 295 (quotation omitted) (cleaned up).

      Hamilton's conspiracy claim fails because he does not plead facts showing that an agreement existed. He alleges that the unknown correctional officers and Reilly "knew that numerous inmate assaults were occurring in the prison and had all seen numerous videos of inmate assaults together in conferences, staff meetings and conversations but chose to . . . ignore the inmate violence . . . ." and that "together [Defendants] crafted a policy that made reckless indifference to inmate assaults ubiquitous." (Compl. ¶¶ 50–51.) That the defendants became aware of some assaults simultaneously demonstrates, at most, a parallel but independent course of conduct, not a combination. *See Mikhail v. Kahn*, 991 F.Supp.2d 596, 645 (E.D. Pa. 2014) ("A conspiracy is not parallel conduct by different parties."). Moreover, Hamilton's "conclusory allegation of agreement at some unidentified point" is not enough to

5

"plausibly suggest a meeting of the minds." *Chruby v. Kowaleski*, 534 Fed.Appx. 156, 160 (3d Cir. 2013) (unpublished) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); and then quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010)).

The procedural posture of this case is unique. If Hamilton believes, consistent with this Opinion, that he can amend Counts IV and V to state causes of action, he may do so.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

6